Good morning, Your Honors. May it please the Court, Brian Renner on behalf of appellants. The major issue, apparently in this case, is whether the Lizada requirements were met. And, of course, we are contending that they were. The first issue is whether an affidavit was submitted with what the duties were and so forth. In this particular case, the one item that the attorney did not do is to notify the appellant that the BIA decision, the Board of Immigration Appeals decision, had come in and therefore put the appellant on notice that one of two things, that they could either voluntarily depart because the voluntary departure was reinstated for a period of 30 days or appeal to the Ninth Circuit. So that one act took away appellant's rights to basically not be deported for a significant portion of the life of the appellant. And because of that, we're contending that the Lizada requirements, at least the first one, had been met because even though in the underlying record, the judge in the underlying record said there's no description of what agreement was entered into, what duties were and so forth, the fact was that the record shows that the attorney represented the client in the BIA proceedings. And it follows from that that even though it may not specifically be stated that upon conclusion of the decision of the BIA that there is a duty in which or that there is the attorney will notify specifically the appellant whether or not, you know, it's been denied or approved, it's the duty of the attorney to do that is a very critical point. And was the decision of the BIA sent only to the attorney? Yes. Yes. And because of that, the duties are clear. It's clear as to what was going on. Now, as far as the second prong of the Lizada requirement, it states that counsel must be informed of the problem and respond thereto. In this particular case, at the point where the appellants had wondered what was going on with their particular case, they went to the attorney's office. They inquired as to what was going on. And at that point, the attorney had the opportunity to respond, to try to rectify the situation, to explain why he hadn't told them what had occurred. And nothing like that happened. Basically what happened is the attorney said, sorry, the BIA appeal came in. It's been denied. Okay. And so based upon that, we contend that two of the Lizada requirements have been met. Why didn't they file the ineffectiveness of counsel? Why didn't they go to the Bar Association or their lawyer or the present lawyer, file the ineffectiveness of counsel? Why didn't he do that? I think at this point, Your Honor, they were more concerned at this point about not being deported out of the country rather than going back and trying to rehash it. I don't understand what I'm saying. They hired a lawyer here who was different from the lawyer they had originally. Couldn't he have done that for them? Or could they have urged them to do that for them? Their new attorney? Theoretically, yes. Theoretically, yes. However, the Lizada requirements, there are several cases in the Ninth Circuit which specifically state that if the purpose of the Lizada requirements are met, that strict compliance with the three elements are not necessary. And in this particular case, because it's clear exactly what was done wrong, it's clear what the results were and so forth, we're contending that there does not need to be strict compliance with the Lizada requirements. That would actually have the opposite effect of what was intended insofar as if there is a clear and unambiguous duty of an attorney to perform an act, if he can hide under the Lizada requirements saying that, well, you know, there was no complaint made against me, therefore the Lizada requirements shouldn't be enforced, then it actually encourages this kind of behavior. They also filed a habeas before they left. Correct. Was that being pursued at all? Well, Your Honor, this is the appeal of the habeas. The habeas was filed. It was denied. And, of course, this is the appeal of the habeas. I have actually not been able to get in touch with appellants at this point, so it's unclear to me whether they've actually been deported or not. I know that in the opposing papers, they do say that the deportation has occurred. And in this particular case, now they are prevented from coming back to the U.S. for many years because of this. If this court were to grant this petition based upon what is put forward, then their voluntary departure would be reinstated and they could come back any legal way that they wanted. There are several cases which are in the paper showing the relaxation of the Lizada requirements if the factors are met. One is Lizada Rodriguez-Larez specifically says the Lizada factors are not rigidly applied, especially when the record shows a clear and obvious case of ineffective assistance. Castillo-Perez, Lizada need not rigidly be enforced where it was clearly demonstrated that counsel completely failed in his duties to the client and so forth. Finally, flexibility in applying the Lizada requirements comports with Lizada's policy goals, which are to provide a framework within to which to assess the bona fides of the substantial number of ineffective assistance claims asserted and so forth. When these goals are met, they have not, and they being the Ninth Circuit, have not insisted upon strict compliance. There was one case, the Fajardo v. INS case. It basically says it is hard to believe that not being told to appear at a deportation hearing would not constitute an exceptional circumstance. While this case is not exactly the same, pretty much if someone is not told that the BIA decision has come in and the 30 days just passes, that it doesn't fall under this particular requirement. The only other major point to this case I'd like to bring up is the exhaustion of the administrative remedies. The opposing side has basically said that a motion to reopen should have been brought forward, and we are concerned. Isn't that the normal way to raise a claim of ineffective assistance, by a motion to reopen? In this particular case, though, Your Honor, there was nothing brought up in the original BIA appeal regarding ineffective assistance at counsel. And with a motion to reopen, there must be either law that was incorrectly applied or there is new and existing facts that were incorrectly ruled upon by the BIA. None of that existed. Also, at the time of the appeal, the BIA did not have a motion to reopen.  And if there were issues to have been raised, then I guess I'm not sure what's ineffective. You're saying just the absence of voluntary departure. That's the only thing that you're challenging. That's a big — if you're talking to a person who has been deported and they can't come back for 10 or 20 years when they would have had the opportunity to not have a deportation order and come back. I guess what I'm trying to track in my own mind is your argument is, I take it, that a motion to reopen was not available because you were not challenging the BIA's order, only the inability of your client to follow through from the order. That's correct, Your Honor. That's correct. And also, if appellant wanted to appeal to the Ninth Circuit, of course, there was 30 days. But at the time the BIA decision was issued, you know, there's the 30-day requirement to go to the Ninth Circuit, and then there's the 90-day requirement to do a motion to reopen. There shouldn't be the choice. If the appellant wants to go to the Ninth Circuit, that is available. It's not foreclosed because that appellant did not do a motion to reopen. With that, I'd like to reserve the rest of my time for rebuttal. Well, I'm trying to figure out what you want. Is what you want limited simply to reinstatement of voluntary departure, or do you want more than that? I think at this point, Your Honor, the appellants have already been deported. At this point, reinstatement of voluntary departure would be what they would ask for. So you're not saying, I'm not arguing prejudice on the merits. You're simply saying that the ineffective assistance of counsel deprived them of the voluntary departure, which they would have made. Correct. But ideally, Your Honor, the ultimate decision would be reinstatement of the voluntary departure and the opportunity to appeal to the Ninth Circuit if they want within 30 days. That's what I'm saying. I'm just saying that they would have been in the same position if they had been notified that the BIA had denied the case. But then that's contradictory to what you told me, I think, when I said, why wasn't there a motion to reopen? And you said it's not available because there wasn't anything wrong with the BIA's order. And if there wasn't anything wrong, then I don't understand what the basis would be to appeal. No, I'm sorry. I didn't mean to say that, Your Honor. What I'm saying is that they could have done a motion to reopen if they wanted, but they chose to go up to the Ninth Circuit. There's nothing that specifically mandates that they do a motion to reopen versus going up to the Ninth Circuit. Well, for ineffective assistance of counsel, there is, because you can't make that record here. You can only make that record before the agency. But there was nothing on the record at the BIA level. There was nothing previously that was filed at the BIA that made any comments whatsoever regarding ineffective assistance of counsel. There was nothing to do a motion to reopen because there was nothing on the record to indicate that they were making a claim for ineffective assistance of counsel. This would have been a first opportunity that they had to make a motion to reopen. They would have never had the opportunity to bring it before. That's why I'm saying that the motion to reopen would not have been the proper vehicle to go forward in this particular manner. If the BIA had said the ineffective assistance of counsel is denied because of this and that, and they had incorrectly stated those facts, then they could have made a motion to reopen. We would have been able to put forward evidence showing that the BIA was incorrect in denying the motion to reopen because of certain facts regarding the ineffective assistance of counsel. But there was nothing on the record. There was no evidence before them regarding the ineffective assistance of counsel. I hope I answered your question, Your Honor. If I could reserve the rest of my time for rebuttal. Well, you don't have any, but we asked some questions, so I'll restore some time to you. Thank you, Your Honor. Mr. Olson. Good morning. May it please the Court, Andrew Olson. One moment, Mr. Olson. Will Mr. Olson's voice record from where he is seated? And if not, would you move the microphone, Ms. Horman? Would you go help him? Thank you. Excellent. I think this will work. I think that will work great. Okay. Thank you. I'll start again. May it please the Court, Edward Olson from the U.S. Attorney's Office in San Francisco, on behalf of the Respondent and Appellee, Tom Ridge. I'm a little confused by the argument that the Petitioner is raising regarding the motion to reopen, and I think he's making it more complicated than it really need be. The way this process should normally work is that if the Garcias felt that they were provided with ineffective assistance of counsel by their former attorney, Frank Sprouls, they should have filed a motion to reopen with the BIA. And that motion would have alleged, A, that Frank Sprouls failed to advise them of the issuance of the BIA's opinion and, therefore, they were deprived of the opportunity to file a timely petition for review, and, B, Frank Sprouls failed to advise them of the issuance of the BIA's opinion and, therefore, they lost their ability to depart the country voluntarily within the 60-day period that the BIA imposed in its decision. The Garcias are alleging now that they lost that ability because Frank Sprouls had no interest in asserting his own ineffective assistance to the BIA. But there's no allegation here. There are Ninth Circuit cases which hold that it's unreasonable to expect aliens an alien's former attorney who was fraudulent to file a motion to reopen alleging his own ineffective assistance. There's no allegation here that former attorney was fraudulent. B, even if the Garcias can say that it really wasn't reasonable to expect Frank Sprouls to file a motion to reopen with the BIA, at some point it was incumbent on them to recognize that their attorney, if it's true, messed up and it's time for the aliens to seek new counsel. Is there anything in the record that suggests that counsel was anything other than ineffective? In other words, is there any evidence that the decision actually was in their hands in time for a voluntary departure to occur? I think that's the whole point of the Lizada requirements, is that we only have one side of the story. We have the Garcias' allegation, and admittedly it's in an affidavit, that Frank Sprouls failed to notify them of the issuance of the BIA's opinion. But that's their story. That's exactly why we have the second requirement in the Lizada, which is to ask the aliens to notify their former counsel of the alleged ineffectiveness and give former counsel an opportunity to respond. The story may be that the Garcias were not notified. On the other hand, the story may be that Frank Sprouls said, yes, I picked up the phone the day the BIA issued its opinion and I faxed you a copy and you read it and it was your decision not to voluntarily depart the country. That may be the story. And then three, the third requirement in the Lizada would further this purpose, which I'm alluding to, which is the possibility of collusion between the alien and attorney by filing a complaint with the State Bar. Let me ask you this. Let's assume, and I understand the other side may contest this depending on how the question is asked, but let's assume for the moment that on the merits of the order of the BIA, there really is nothing to attack and that the only real problem that we have or that the Garcias have is that there was a failure to notify them in time so that they could voluntarily depart. Any appeal to us was going to be hopeless, and under the new rule we would not even have extended the time voluntarily to depart because they couldn't have made a showing of sufficient likelihood of success. So their only choice realistically was going to be voluntarily to depart. Nonetheless, it turns out they don't get that choice. I'm now believing for the moment their affidavit because they weren't timely notified. If that were the circumstance and if that's the only thing that was alleged to the BIA for purposes of motion to reopen, is there any ground to reopen? That is an entirely new argument that the Garcias are making here, that there's no basis for a motion to reopen when there's no substantive or procedural flaw with regard to, you know, the BIA's underlying decision. I haven't seen anything, any BIA case, any Ninth Circuit case, any district court case, any case saying that you can't bring a motion to reopen in the exact circumstance that you described where you're not complaining of any error in the IJ's decision regarding your application for asylum or the BIA's decision affirming that and your only claim is that my attorney messed up by not giving me the opportunity to voluntarily depart within the 60 days imposed by the BIA. I see no reason, and I'm not aware of any statute or regulation that would prevent an alien from raising a motion to reopen. Well, the question, of course, is a little more subtle than that. You can make a motion. The question is there's some basis upon which to suspect that the BIA would grant the motion when the only relief sought is an extension of the time voluntarily to depart. Yeah, I understand your point. I don't see any reason why the BIA, in that circumstance, if the BIA was satisfied, perhaps after an evidentiary hearing, that it's true, Frank's rules didn't notify them of the BIA's decision. The BIA would say we gave you voluntary departure for a reason. We understand the significance to the alien of voluntary departure. The consequences of not complying with a voluntary departure order are severe. You're prohibited from applying for certain kinds of relief for 10 years if you don't voluntarily depart. I can't speak for the BIA, but I'm not aware of any reason why the BIA would not grant a motion to reopen if it was satisfied that the attorney didn't tell them of the BIA's order. Now, according to the affidavit of the Garcias, how much time did they have left to them to make a motion to reopen at the time they discovered from their counsel that they had not been notified? They had approximately 30 days. And your argument is that within those 30 days they were supposed to get themselves a new lawyer. They were supposed to comply with the matter of Lozada, and they were supposed to make the motion to reopen. Correct. And what would have happened if they'd had three days? Would your argument be the same? My argument would be in that situation, the Ninth Circuit has said that equitable tolling applies. Yeah. And, of course, that's a recent case. It did not exist at the time these events happened. Correct? That's the Ituberia case? Well, I'm trying to remember when there's Socup-Gonzalez v. INS is a non-bond. That's earlier, yeah. Which I think is earlier. I can double-check that. I think that's a 2001 case. But in those circumstances, an alien can say my client or my attorney was ineffective and I missed my 90-day filing period because of his ineffectiveness, and therefore you should apply equitable tolling to allow me to accept it. So you would go back to Socup-Gonzalez. Okay. And the final point I'd like to make here is that, you know, assuming the district court properly excused their failure to file a motion of reopen with the BIA and said, okay, but at least you've got to show me something that gives me some indication that your former attorney was ineffective, the alien's current attorney, the attorney who is here today, didn't present any affidavit or didn't present any letter saying I've notified. Former counsel, you've got to understand, former counsel can't be expected to make a bunch of arguments alleging his ineffective assistance. But current counsel hasn't provided the district court and today hasn't provided any explanation why he couldn't have notified Frank Sprouls and said, I'm filing a habeas petition. Granted, I don't have a lot of time, but I'm filing a habeas petition. These are my allegations. What's your response? Current counsel hasn't explained why he couldn't have filed a complaint with the state bar to give the district court something to go on. And that's what the district court said. I have an affidavit from your client saying Frank Sprouls didn't provide you with the BIA's opinion. But Frank Sprouls hasn't been given the opportunity to respond, and there's no indication that a complaint has been filed against Frank Sprouls. Why haven't you complied with these requirements? Never mind Frank Sprouls or the aliens. Why haven't you? And I raised these arguments in my opposition to the habeas petition, and at that point, it would have been Petitioner's counsel's obligation to say, well, I can do that. If that's what's missing, if that's your concern, Judge, I can do that. Give me a little stay. He didn't ask for that. And he didn't ask for a stay of the district judge's decision pending this appeal. That's the critical error in my mind, that if you can excuse a number of the hurdles that I argue the aliens have to satisfy, he can't get over the final hurdle, that he himself hasn't provided this information. So I'll briefly just address an argument that the district court did not rely on, and that is, the proper procedure is to file a motion to reopen with the BIA and let the BIA develop the record. And that being satisfy the requirements under Manor Lozada. And the Ninth Circuit is very clear that an alien must first satisfy those requirements before bringing a habeas action based on ineffective assistance of counsel. And the final argument I'd like to make is that it's true the Ninth Circuit does not require rigid compliance with Lozada, but in all of the cases that I've read where the Ninth Circuit has excused those requirements, they've all been where the administrative record is clear that there was ineffective assistance. For example, Derringer, the attorney, admitted on the record that he missed the filing deadline for filing a petition for review with the Ninth Circuit by one day. In all the cases, it's undisputed that the attorney is raising his hand, saying, I screwed up. So there's no reason to put the alien through the Lozada requirements, because the facts are undisputed. The question is, you know, did they establish prejudice? In this case, that's exactly what's missing, and we don't have the facts. And the district court gave Petitioner's counsel an opportunity to give him those facts, at least let Franks Roles have the opportunity to say, no, I gave them the BIA's decision. I always do that. I faxed them the decision, and it was their decision to stay in the country as long as they could, which is as reasonable as the story that the aliens are presenting, and that's exactly why we have that requirement. So there's some evidentiary basis to make a credibility determination. Thank you, counsel. Mr. Lerner, you exceeded your time, but we asked a lot of questions. So why don't we restore a minute of rebuttal time for you? Okay. I think one point I need to make here is in the Immigration Nationality Act, it provides very specific provisions when the immigration judge denies the case, when the BIA denies the case, when judicial review first comes into effect. There is nothing in the Immigration and Nationality Act which says if the BIA denies the case, you must make a motion to reopen within 90 days. Then you have 30 days in which to do a petition for review. It doesn't say that. It says that there are 30 days to do a petition for review to the circuit court once the BIA denies the case. The motion to reopen is voluntary. It's a vehicle that can be used, but it is not mandatory. It is not required. And there's nothing in there to give the option to the alien. They can go either way. So if they want to preserve their rights for the petition for review, they get it filed within 30 days, because if they don't, even if they do a motion to reopen, they might later lose the right to do the petition for review. Let me ask a question that was raised by the other side, and that is whether you and whether you had a responsibility at the habeas stage to go to the prior attorney and seek his side of the story, as it were, a sort of after-the-fact, late compliance with Lozada. Your Honor, if there was absolute, strict compliance necessary with Lozada, then I would say yes. But we're arguing that the case is so clear of what was done. This is one simple thing. The simple thing is so clear based on the affidavit of the Garcias. Yes. But that may not be true. That is to say, their lawyer may say, yeah, yeah, right. I sent it to him. That could be, Your Honor. But then what it does is instead of protecting the alien in this particular matter, it becomes basically a credibility shouting match between the alien and the attorney. And then we are shifting. But if the premise for the habeas is ineffective assistance of counsel, at what point do we ever get a fact finding as to whether or not there was ineffective assistance of counsel? At the moment, all we have is affidavits from one side. And my question, in a way, is at the habeas proceeding, is it your responsibility to get the evidence that's contradictory to your client's story, which it might be, or is it the government's responsibility to do that? Your Honor, I think either party could have done it. But when the habeas was filed, at that point it had been too late. There was an order that they were going to deport. They being the immigration was going to deport the aliens. And at that point, you know, I don't think it's reasonable to bring a habeas and then ask for a stay in order to do the lasada at that point. Did Judge Jenkins give you an opportunity to go seek an affidavit or some form of testimony from the earlier lawyer? No, Your Honor. The judge had given an opportunity to submit the briefs and so forth and issued the temporary stay. There was nothing specifically on the record which said, Mr. Lerner, you go and you comply with the lasada requirements and come back to me in a month. I mean, obviously, if the judge had said that, I would have done it in a second. Okay. But the evidence was already in. It was already submitted to the court. It was just a matter of briefing. Okay. And one more quick point. We would just respectfully request that the voluntary departure be reinstated so that because of this matter, the aliens are not out of the United States for a good portion of their life unnecessarily. Thank you. Thank you, counsel. The case just argued is submitted. And we'll move to the last orally argued case on the morning calendar, which is United States v. Brown. Counsel may begin whenever you're ready.
judges: Graber, W. Fletcher, Weiner